May it please the court, Carolee Lusky for the appellant Maxie Moore. I'd like to address two issues today. The first is that the district court abused its discretion in imposing a registration requirement under SORNA. This is true for two reasons. First, there was no evidence in the record that Mr. Moore was required to register under SORNA under any of the relevant state laws implementing SORNA. I guess from the standpoint, the SORNA issue is the one that interests me here and I think it's the most difficult part of this case. Seeing that there's no evidence about your client being a danger and all of those things, I think it's really just a rock that you're going to have a hard time pushing uphill. But the question that I more have is the reach of SORNA and whether, I mean, your client was previously convicted of an offense where he had to register, correct? He never had to register under state law. He what? He did not have to register under state law. It was only the implementation of SORNA that potentially required registration. Well, the offense is such. So my question is that also, too, it was a long time ago. So, you know, we don't know too much about how SORNA is going to be interpreted yet. And so that's. Under the statute itself, though, under the Congressional SORNA, there's only a 15-year registration requirement for Tier 1 offenders. Right. And it's undisputed that he's a Tier 1 offender. And his offense, he was committed in 1991. He was convicted in 1994. He didn't serve any prison time. He got a sentence of probation. And the government agrees that his time to register would have been up in 1999. He was. I'm sorry. 2000. 2000. Yeah, 2009. And he was sentenced in May 2010. So the only way that he could be required to register under SORNA is if one of the relevant states which implemented SORNA includes a tolling provision in its law. And there's no evidence that there is such a tolling provision that applies in this case. And also, I guess the other way would be if a court could, as a condition of release, impose that as a discretionary part of a person's release. Certainly, Your Honor. The court has the discretion to impose whichever conditions that it chooses. But the conditions must be reasonably related to the considerations of sentencing and supervised release under 3553A. They may not impinge on liberty any more than reasonably necessary. And they must be related to the sentencing policy decisions. And I would suggest that it would impinge on Mr. Moore's liberty more than is reasonably necessary to require him to register when Congress, which enacted this comprehensive statute that was trying to get everybody into a uniform system,  And as this Court observed in Juvenile Mail, the registration requirement under SORNA is quite more restrictive than most registration requirements. For example, it requires in-person registration. And for Mr. Moore, that would be once a year. So I would suggest that if it were just out of the Court's discretion, it would have been an abusive discretion to impose this consideration. One of the things that comes through quite clearly in the transcript is the district court's, you know, frustration, if you will, and certainly is very clear about his knowledge of this particular individual and the specifics and his concerns. So he gives fairly clear reasons. Where specifically did he go wrong? Your Honor, the Court based this decision, and it starts on page 23 of the record. It goes through 24. The Court based its decision on the Court's long history with Mr. Moore, with the supervised release violations. There were three prior. On his criminal history, because he has committed several fraud crimes, he was deemed unreliable. And on the psychosexual evaluation from Dr. Compte. The only two things that this Court can review are the psychosexual evaluation from Dr. Compte and the criminal history. The Court, this doesn't give, the record doesn't give this Court enough to review the specific reasons the district court thought he was a danger to children. The Compte's report said that he didn't, there wasn't sufficient evidence to show that he was a sexual deviant. There wasn't sufficient evidence to show he was a pedophile. And there wasn't sufficient evidence to show that he was an untreated sex offender. And under this Court's decision in TM, without more in the record than this 1994 conviction, the supervisory conditions should not have been imposed. Well, I guess, though, there is evidence that contradicts your position from the standpoint that the very nature of, you know, some of his fraud things are so that people won't be able to identify him. He's not supposed to be, you know, he never complied with the fact that he wasn't supposed to be around women that have young children. He seeks that out and, you know, you've got, you know, he just, he never did anything he was supposed to do. Your Honor, there is evidence in the record that he violated his conditions of supervised release. There is no evidence in the record that he sought out relationships with women who had young children. That was speculation on the part of the probation officer. There is no independent testimony of women. There's no text messages. There's no e-mail trails. It's pure speculation on the part of the probation officer. And the probation officer is entitled to make those. He wasn't supposed to have unsupervised contact with minors, is that correct? That's correct. And at the time, he was living with a woman who had an 8-year-old daughter, right? Right. Who didn't, he found her on Craigslist, and she didn't know that he had prior sex crimes because he was using a different name, right? Mr. Moore resists strongly being labeled a sex offender. Of course he does, but when we look at everything, we have to look at not only the way you want to see the evidence, but also the way that the court may, you know, we have to look at all of it. And when we look at an abuse of discretion, that doesn't necessarily mean that someone has to come down the way that your client would want them to. Yes, Your Honor. But in the unsupervised contacts with minors that he had, they were all technical violations. There was no evidence that anything inappropriate happened beyond that. And when you read the district court's explanation of sentence, it talks more about its own impressions. We can say, oh, maybe the court was relying on those things, but the court is required to put those things in the record and say these are the things I'm relying on. It relied on Dr. Comte's report, its own impressions of dangerousness, and his prior convictions. Let me ask about one thing that I haven't been able to resolve from the record. In your brief, you make the following statement. He used the identity to establish a new persona, one not required to register as a sex offender, not barred from living a normal life. And the district court seems to say that. But where in the record did Mr. Moore say that? And maybe he did. I just don't know. Well, I suspect that that's just my own speculation, Your Honor. He didn't. I don't think he gave an explanation for why he was choosing to. But one of the problems is you said it in your brief, and then the district court, and maybe below, I don't know if it was Mr. Levy. Mr. Levy. Below. I don't know if he said it, but it seems to have permeated the record. But does it matter whether you said it or Mr. Moore said it? I'm wondering what relevance it has to your decision or your thought process here. Well, it has to do with the district court. Yeah, the district court is sort of saying, you know, he sees this guy as trying to skirt the edges, and that's why he wants to put him, you know, into the box of registration because he doesn't want him, you know, pushing the envelope, so to speak. That's how I read the district court's decision. I know this guy. I've been there. I watched this, and he pushed, pushed, pushed. And so I'm going to put him in this box where he has to register. And I thought as I reviewed the district court's decision, he's kind of saying that he is trying to do this. So I'm just asking you, you know, if it's not in the record, then maybe the district court is under some misapprehension. But it's in the record. I don't think Mr. Moore ever said that, Your Honor. But I do think that the conditions that have been imposed have been plaguing Mr. Moore since they are arising from this 1991 incident, which under TM is not enough. And what we have basically are the same things that the Court had in TM, Abucci and Napier. We have speculation that maybe something bad was happening, but we don't have any evidence in the record. And based on pure speculation, it's insufficient to impose the sex offender conditions of supervision. And if there are no more questions, I'd like to reserve. Good morning, Your Honors. May it please the Court. Norman Barbosa on behalf of the United States. I'd like to address Judge McEwen's question first regarding whether or not Mr. Moore admitted that he was seeking to avoid the registration requirement. He absolutely did not. That is an inference that the Court has drawn, I believe. And I have also advanced, based on the evidence, that Mr. Moore was informed of the need to register. He, in fact, signed an acknowledgement, and that is discussed in the complaint at paragraph 11. I appreciate your candor on that. And immediately upon being released from prison, as opposed to his two previous releases, he immediately absconded and assumed the identity of SDF and then was on the lam for several months, only to be found ultimately with another woman with a minor daughter. Turning to the SORNA requirement, I believe the Court had no choice but to impose the SORNA registration requirement here. I don't believe he actually even had discretion not to, because Mr. Moore so clearly fits the definition of a Tier 1 offender. He has a crime on his record that he was a Tier 1 offender. And then he would have had to register for 15 years. What case authority do we have at this point that tells us that we, you know, that now we can impose it 16 years later or whatever, 17 years later? I don't know. We don't have case authority for that. What we have only, all we have to turn to is the statute and the Attorney General's guidance. The statute, the plain language of the statute, excludes time in custody. That would appear to exclude all of his time in custody. There's no, in 42 U.S.C. 16915A1, there is no differentiation between time in custody for the sex offense of conviction or time in custody otherwise. The Attorney General has issued guidance for states as they implement SORNA, and Washington has not yet implemented it. So we don't know, but we don't know whether there's the next, we don't have any case law on ex post facto or anything like this right now, correct? No. Correct. Correct. Well, I guess what now mail isn't, at least on a temporary basis, it's gone off to Montana. And juvenile mail is a very different case. It's like a whole separate, it's a juvenile, it's very specific. Yes, and I believe the case is interpreting, the Supreme Court has ruled on the ex post facto question in relation to other registration situations. You know, I have concern that I handled a lot of these type of cases as a lawyer and then as a trial judge. And I have concerns in that, you know, generally speaking, the legislatures and Congress have not wanted to leave to the discretion of judges of whether they impose a registration offense. And so there's a lot of times that are fighting in courts about this. And so I struggle with this argument about, even though I think that there's a lot of evidence in this record that would say that Mr. Moore needs, we need to know where he is, all right? I don't, I really, I guess I disagree with appellant's counsel on that point. I think the judge had reasons for that. But it concerns me that there's any intent to make this a discretionary thing on the part of judges,  you have to register because we want to know where these people are. And then you've got the whole retroactive thing that, you know, I don't, you know, this is sort of going where we don't, you know, I guess I'm trying to say, you know, I don't find a case or authority that exactly supports this other than common sense that we need to know where Mr. Moore is. I don't think Congress did intend to give discretion at all here. I mean, they even modified the supervised release statute, 3583D, to specifically indicate that if somebody is subject to SORNA, the judge must include an explicit condition that they comply with SORNA. So the only question is, does he fit SORNA? And it absolutely seems on its face that he fits SORNA and that the time should be told. The only possible limitation is the Attorney General's guidance to states, that the states could then come in and exercise discretion, according to the Attorney General, that would not require the tolling of that time. That's the one open question. We don't know what Washington might do. Coupled with the judge's discretion otherwise to impose conditions of supervised release, I believe it's the right way to go in this case. It fits the statute. It fits the Attorney General's guidance in terms of the discretion. And it certainly fits the facts of this case. I'll turn to the conditions of supervised release if the Court enlists what I think. Well, now, do you think Reynolds is going to help us out at all? The Supreme Court is going to hear that. I mean, it's a different issue, but. . . I don't believe so. I don't believe any of the cases will give us much guidance in terms of this particular one. The ex post facto question has not moved up to the Supreme Court, but I think previous rulings from the Supreme Court in addressing other registration schemes are going to foreclose that argument that this is an ex post facto violation. Well, the Supreme Court has been, has cast a pretty broad net in terms of, you know, there's not a high tolerance of people that, you know, the jurisprudence seems to be a little bit different in this area than in some other areas. I would agree with you on that point. But I think to the extent, I don't think Congress wants it to be discretionary with judges, either you are or you aren't, because then judges would look in each situation and would say, well, oh, I don't think this offenders is bad, so I'm not going to put the registration. I don't think they want that type of thing. So the question is really, does it reach back to him? I agree. I don't think they want a lot of discretion in this, and I think the statute gives this court an easy way to say that it is not discretionary. He does fit the plain language of this act. He clearly is a Tier 1 offender. The offense that he was convicted of, the elements of it are sexual relations with a minor. And SORNA. Was the conviction when? I'm sorry? That was the conviction when? That's the 1994 conviction, yes. I guess it doesn't matter if he registered then, all those years are gone. TM was pre-SORNA, correct? Correct. The difficulty I have, too, is you have this evaluation, even unlike TM, he's basically not deemed, there's not enough evidence to say that he is in the pattern of somebody who does child sex abuse. I mean, it's quite a mishmash, that psychological report. Basically, he says, I can't tell anything at the end. So we don't have anything like that. So are you left with the fact that he goes out with a woman who has a child? Is that really what it boils down to? Yes, it is what it boils down to, is those violations, that history of violations. He is engaging in repeated, unsupervised contact with a minor, and he knows full well that is going to send him to jail. And the last violation, I think, is even more troubling, because he's gone through these histories of violations. He knows exactly what Judge Layton is going to do if he catches him doing this again, and he doesn't even bother to try to comply with his conditions of supervised release on that last violation. He immediately assumes a new identity and hits the road. So I guess basically what it should really say, you can't have any unsupervised contact, and this means you can't, even though you're age appropriate, you can't date any women who have children. That's what it is, right? It does amount to that. He can't have that unsupervised contact, but he could seek the permission of his probation officer. That was in the original conditions, too, and there are absolutely methods to deal with this at the district court. If he has concerns, he can bring these up with his probation officer. His probation officer can bring those up with a judge and seek modifications of those terms. He never did that. Well, just to get the outer limits of kind of the bookends here, you would agree that if someone had an offense in 1994 of this nature, but there were no indication in the record of anything happening since then, and he is then convicted of an offense relating to a con game or wire fraud or something, having nothing to do with sexual offenses, that SORNA would not apply or not? No. I think SORNA will still apply. The other slew of conditions TM is going to address, but SORNA, as Judge Callahan is pointing out, Congress is not giving the court a whole lot of discretion on that. That will have to be imposed. If he fits SORNA, 3583D says the court must include a specific condition of registration with SORNA, regardless of the nature of the new conviction. The plain language of it requires. It's in the time. I'm sorry? I didn't hear that. Okay. Well, that raises a question about the age of the conviction, but you're saying that because there was incarceration during that period, that in effect is like a tolling of the larger. Although he did note that it's kind of interesting. He said, well, one of the things is he had been out, and he had committed fraud, but not sex crimes. So he hasn't actually, and it may be sort of an odd defense, but he hasn't during the time he's been out had any recurrence of any sex-based offense. Is that correct? That is correct. And that should not be a requirement in order to impose these conditions. The goal is to avoid any new sex offenses, and that has been successful so far. So the time is the time that Congress set out, and here it's been told because he was incarcerated. Correct. So it's 15 years from now? No. And I apologize for not having the complete calculation, but it's going to be 15 years from 1994 minus the time in custody, which has been quite a bit. And if there was no time in custody, it would have expired in 2009. So there's still several years. I don't have the exact date it would expire based on those calculations. And does it matter at all that Washington hasn't done anything to put this to paper? That is the one difficult question here, I think, because we don't have guidance. We don't know what Washington would do. So if there is any discretion in the judge's hands, it's that question. But I think you can turn to the plain language of the statute, which says excluding time in custody. And it doesn't say excluding time in custody for the sex offense or the original conviction. It just says excluding time in custody. Thank you. Okay, thank you. On the tolling issue, Your Honor, in the 28J letter I submitted to the court, the regulations say that all that's required under SORNA is the flat 15 years. If a state wants to toll SORNA while the person is in custody, they can. But under SORNA, it's just the flat 15 years. And I think the regulations also address what it means to exclude time when somebody is in custody. The regulations state that it's the intention of Congress that you don't need to register while you're in custody because you're already in custody and you're being observed, not that the statute tolls while you're in custody. Second, I just would like to point out that these conditions that the court has imposed are onerous, stigmatizing, life-altering conditions. For example, Mr. Moore not being able to have unsupervised contact with his children or grandchildren, not being able to frequent places where minors are known to go. It doesn't mean that he couldn't get that if he sought permission, but he never contacts his probation officer. He doesn't do anything that he's supposed to do. And so it's not per se a denial on that. That's the problem. Some of these allow for doing these things with permission and some of the conditions don't. But you can always go back to court and ask the court to modify something when something's presented. What this does is it doesn't leave it to what the court considers to be, I don't know, a heapofile or whatever. It doesn't leave him the discretion to decide which children he can hang with. Well, the bottom line, Your Honor, is that there was no evidence in the record about current dangerousness. It was just speculation. And for these reasons, I ask the court to vacate and remand the sentence. Thank you. The case just argued is submitted on the briefs.
judges: Schroeder, McKeown, Callahan